**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| VINCENT LICKENFELT, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| | ) | Civil Action No. 07-0958 |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

CONTI, District Judge.

## INTRODUCTION

Pending before the court is an appeal from the final decision of the Commissioner of

Social Security ("Commissioner" or "defendant") denying the claim of Vincent J. Lickenfelt

("plaintiff") for Supplemental Security Disability ("SSD") under Title II of the Social Security

Act ("SSA"), 42 U.S.C. §§ 401-33. Plaintiff contends that the decision of the administrative law

judge (the "ALJ") that he has not been disabled since September 29, 2004, and therefore not

entitled to benefits should be reversed and remanded to the Commissioner either for payment of

disability on the current record or for further administrative proceedings because the decision is

not supported by substantial evidence in the record. Defendant asserts that the decision of the

ALJ is supported by substantial evidence. The parties filed cross-motions for summary judgment

pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. The court will deny the motions

of defendant and plaintiff for summary judgment, but will grant plaintiff's motion for remand for

further proceedings by the ALJ to develop the record regarding the side effects of plaintiff's daily opioid medications, i.e., Oxycontin and Percocet.

## FACTUAL AND PROCEDURAL BACKGROUND

### *Procedural History*

On March 9, 2005, plaintiff applied for disability benefits alleging disability since September 29, 2004, due to right arm amputation and surgical re-attachment, sleep problems, sciatica problems, and neck and shoulder problems. (R. at 39, 86.) Plaintiff's claim was denied initially by defendant on June 22, 2005. (R. at 55.) On July 5, 2005, plaintiff timely requested a hearing before an administrative law judge. (R. at 60.) The ALJ held a hearing on May 1, 2006. Plaintiff, represented by counsel, testified, and a vocational expert (the "VE"), testified at the hearing. (R. at 286-343.) On June 28, 2006, the ALJ issued a decision finding that plaintiff could perform other work and was not disabled. (R. at 43.) On August 21, 2006, plaintiff filed a request for review of the ALJ's determination. (R. at 80.) On September 20, 2006, the Appeals Council granted the request for review and vacated and remanded the case for further proceedings. (R. at 52.) On remand, an additional hearing was held on December 5, 2006 where plaintiff, represented by counsel, was present along with an impartial vocational expert who did not testify. (R. at 15.) On February 21, 2007, the ALJ issued a decision finding that plaintiff was not under a "disability" as defined by the SSA from September 29, 2004 through the date of the decision. (R. at 28.) Plaintiff, on April 17, 2007, again requested review of the ALJ's decision to the Appeals Council. (R. at 11.) On May 16, 2007, the Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.

(R. at 7.)  Plaintiff now seeks judicial review of defendant's final determination that he is not "disabled."

### Plaintiff's Background

On March 9, 2005, when plaintiff was forty-six years old, he filed for disability benefits alleging that partial amputation of his right arm and subsequent re-attachment, sciatica problems, sleep problems, and neck and shoulder problems limited his ability to work.  (R. at 86.)  Plaintiff is  literate and has an eleventh-grade education with subsequent technical training. (R. at 27, 124.)  His prior work experience included being a construction worker from 1989 to 1991, a residential landscaper from 1991 to 1993, a mushroom deliverer from 1993 to 1994, and a machine maintenance worker from 1994 to 1997. (R. at 135-44, 297-300.)  In 1997, plaintiff was severely injured at work when his right arm (his dominant hand) was partially amputated and then surgically reattached. (R. at 300-05.)  Because of the injury, plaintiff could no longer perform maintenance on overhead cranes. (R. at 301.)  He returned to work three years later as a machine operator, and he operated a centerless grinder and surface grinder.  (R. at 301-02.)  In addition to this work, he fixed and operated forklifts. (R. at 332.)  On September 29, 2004, plaintiff was voluntarily laid off after alleging that the pain in his right arm prevented him from continuing to work. (R. at 360.)

*Medical Evidence*

In 1997, plaintiff's right arm was partially amputated above the elbow. (R. at 305.) The arm was reattached, but plaintiff continued to experience pain related to the incident and consequently was treated by Stephen Thomas, M.D., of Pain and Disability Management Consultants, from October 2000 through November 2006. (R. at 181-96, 240-45, 254-55, 273-77.) Dr. Thomas's treatment included regular dosages of Oxycontin[1] and Percocet[2] that plaintiff took consistently without abuse. (R. at 185, 196.) Dr. Thomas noted that the effects of the medications were not "undue" or "problematic." (R. at 181-83, 276.) In October 2000, Dr. Thomas's treatment notes indicated that plaintiff's new job at a machine shop contributed to increased strength and functioning of his upper right extremity. (R. at 193-95.) While plaintiff's pain medication dosages remained fairly constant, his medication was increased in 2001 to accommodate the performance of heavy lifting at work. (R. at 193.) As of April 14, 2005, plaintiff took 20 mg of Oxycontin three times a day, and 7.5 mg of Percocet three times a day as needed for severe pain. (R. at 208-18.) In 2005, after plaintiff was laid off, Dr. Thomas began

---

[1]Oxycontin is a brand name for oxycodone hydrochloride, an opioid analgesic. Physicians' Desk Reference 2680 (62nd ed. 2008). It is "indicated for the management of moderate to severe pain." Id. at 2680-87. The adverse side effects include: "constipation, nausea, somnolence, dizziness, vomiting, pruritus, headache, dry mouth, sweating, and asthenia." Id. at 2683. Less common side effects include "anorexia, nervousness, insomnia, fever, confusion, diarrhea, abdominal pain, dyspepsia, rash, anxiety, euphoria, dyspnea, postural hypotension, chills, twitching, gastritis, abnormal dreams, thought abnormalities, and hiccups." Id. "Somnolence" is defined as "prolonged drowsiness or sleepiness." Tabers Cyclopedic Medical Dictionary at 2027 (20th ed. 2005).

[2]Percocet is a brand name for oxycodone hydrochloride and acetaminophen, an opioid analgesic. Physicians' Desk Reference 1125 (62nd ed. 2008). It is indicated for the relief of moderate to moderately severe pain. Id. at 1126. The adverse side effects include "lightheadedness, dizziness, drowsiness or sedation, nausea, and vomiting." Id. at 1127.

4

to find weakness in the distal fingers and dysesthesia to the upper right extremity. (R. at 181.) In 2006, plaintiff began complaining of pain related sleep disturbance. (R. at 274.) In addition, Dr. Thomas's notes indicated that the pain in plaintiff's arm increased after a sixty-seven pound transmission casing fell onto his chest and arm while attempting to fix his truck. (R. at 277.) Despite the increased pain, Dr. Thomas continued to prescribe the same dosage levels of Oxycontin and Percocet. Id. Dr. Thomas repeatedly reported that plaintiff has a normal gait without antalgia and a non-antalgic sitting posture. (Tr. 18, 181-96, 240-45, 254-55, 273-77.)

In addition to Dr. Thomas, plaintiff received treatment for a variety of ailments from Dr. Prakash Vin. (R. at 201-03.) Dr. Vin diagnosed and treated the plaintiff for hypertension on December 7, 2001, hyerlidipemia on September 5, 1997, and chronic pain syndrome on September 5, 1997. (R. at 197.) For these ailments, Dr. Vin prescribed Accupril[3], Lipitor[4], and Lopid[5]. (R. at 202-03.) Dr. Vin's records also indicated plaintiff's past injuries included a motorcycle accident at age fifteen injuring his knee; a car accident breaking plaintiff's clavicle, left knee, and left ankle; and a seven-foot fall from a catwalk injuring his lower back and left hip. (R. at 249.) Dr. Vin noted that plaintiff had pain in his right arm, left hip, left knee, lower back, and left ankle. (R. at 248.) Because plaintiff had to compensate more with his left arm, he

---

[3]Accupril is a brand name for quinapril hydrochloride and prescribed to patients with mild to severe hypertension. Pfizer's Information for Physicians Webpage. http://www.pfizer.com/files/products/uspi_accupril.pdf.

[4]Lipitor is a brand name for atorvastatin calcium, a synthetic lipid lowering agent. Physicians' Desk Reference 2457 (62nd ed. 2008).

[5]Lopid is a brand name for Gemfibrozil and prescribed to patients with high triglyceride counts. National Institute for Health Medline Webpage. http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a686002.html

reported to Dr. Vin that it was "tired" from overuse. (R. at 248.)  In addition, Dr. Vin reported

that plaintiff's left ear had lost approximately 90% of its function. (R. at 223.)

Plaintiff was treated for depression by Dr. Vin who prescribed Lexapro[6], an anti-

depressant.  (R. at 21.)  Dr. Vin offered to send plaintiff for psychiatric evaluation, but plaintiff

preferred to "wait and see." (R. at 246.)  Plaintiff did not exhibit any other signs of mental health

impairment and was not seen by a mental health professional. (R. at 21.)  Plaintiff's treating

physicians consistently described plaintiff as alert, in no distress, and with normal mood and

sensorium. (R. at 21.)

*Physical Limitations*

In assessing plaintiff's limitations, Dr. Vin noted that plaintiff has limited movement in

the fingers of his impaired right arm. (R. at 202.)  Likewise, Dr. Thomas's records from

February 8, 2005 through February 14, 2006, indicated that plaintiff had decreased rotation and

physical movement of the right arm, and pain when the weather changes.  (R. at 240-45.) In a

Medical Source Statement for the Pennsylvania Department of Disability Determination, Dr. Vin

opined that plaintiff should only lift and carry ten pounds occasionally and only with his left

arm. (R. at 199.)  Dr. Vin also proffered that plaintiff can only stand for intermittent periods up

to four hours and can only sit for up to eight hours with position alterations. (R. at 199.)   In

addition, Dr. Vin found plaintiff should not crouch and can only occasionally bend, kneel, stoop,

---

[6]Lexapro is a brand name for escitalapram oxalate, an orally administered serotonin reuptake inhibitor prescribed to patients with depression. Physicians' Desk Reference 1175  (62nd ed. 2008).  The adverse side effects include insomnia, nausea, increased sweating, fatigue, and somnolence.  Id. at 1179.

balance, and climb. (R. at 200.) Plaintiff was also limited in the handling, fingering, and feeling in his right arm. (R. at 200.) Because of the limited motion in his right arm, plaintiff was unable to apposite his right thumb to the little finger, and can barely touch the second, third, and fourth fingers due to poor grip strength. (R. at 224.)

On June 6, 2005, a Disability Determination Service Physician, K. Loc Le, M.D., performed a residual functioning capacity ("RFC") assessment for state disability benefits. (R. at 231-38.) Dr. Le opined that plaintiff could lift or carry twenty pounds occasionally and ten pounds frequently, could stand, walk or sit for six hours, and engage in limited pushing or pulling with his right arm. (R. at 232.) He also noted that plaintiff had limited fine and gross manipulation in his right hand. (R. at 234.) Lastly, because of his COPD,[7] plaintiff must avoid odors, fumes, gases, dust, and poor ventilation. (R. at 235.)

Plaintiff testified that he is able to prepare simple meals, dress himself, drive, vacuum, fill a dishwasher, wash clothes, shop for groceries, take out the trash, watch television, visit family, attend his son's basketball games, and attend the local social hall. (R. at 314-20.) In June 2006, the record reflects that plaintiff attended a camping trip over a long weekend. (R. at 259.)

Plaintiff testified about the side effects that he experienced when taking his pain medications. At the hearing before the ALJ, plaintiff testified:

> It's a matter of the pain. And the pain medication I take, I get drowsy.
> They've already had to take me home. Someone has already taken me
> home from work because I overmedicated myself, not realizing

---

[7]Chronic obstructive pulmonary disease ("COPD") is a defined as "a group of debilitating, progressive and potentially fatal lung diseases that have in common increased resistance to air movement, prolongation of the expiratory phase of respiration, and loss of the normal elasticity of the lung." Tabers Cyclopedic Medical Dictionary at 2027 (20th ed. 2005).

that—because my arm was hurting so bad, not realizing that I already
had taken. . . .

(R. at 305.)   During the hearing, the ALJ questioned plaintiff about the side effects of his

medications:

ALJ:            You getting any side effects from any of the meds you're taking?

Plaintiff:      On side effects, what do you mean? Like being drowsy?

ALJ:            Well, some unintended effect, okay? Sometimes, you know, you're
                taking a medication for blood clots, for example, so, so, it's, you
                know, supposed to thin out your blood.

Plaintiff:      Um-hum.

ALJ:            And because you get your blood thinned, you keep throwing up.
                You know people—

Plaintiff:      No, nothing like that.

ALJ:            Okay

Plaintiff:      Just side effects, I would say, just being like unaware, like not
                sure-

ALJ:            Okay, that'd be from the opiates, the Oxycontin and the ---

Plaintiff:      Yeah, and the Percocets, yeah.

(R. at 313-14.)   Plaintiff also testified that pain affects his memory and that he wrote things

down at work to remember. (R. at 326-27.)   Regarding the medications, plaintiff testified that

Dr. Thomas would have to increase the "pain medication because some day down the road he's

going to run across a bridge where he's not going to be able to increase it.  Which I have no

problem with  because I know some day something is going to have to give." (R. at 352-53.)

***Vocational Evidence, Hypothetical***

The VE was told by the ALJ that plaintiff was forty-seven years old at the time of the hearing with an eleventh grade education and that plaintiff has past relevant work as a construction laborer, delivery person, a landscaper, a machine operator, and machine repairer. (R. at 334.)   The ALJ asked the VE to assume a

> hypothetical individual of the same age, education and work experience as the claimant. This person is limited to no more than the light category of exertion as that is defined in our regulations; no climbing of ropes, ladders, and scaffolds; no more than occasional . . . overhead reaching, feeling, pushing, pulling with the upper right extremity; and no more than occasional pushing and pulling with the right upper extremity. . . .
> . . . .
> hand levers less than five pounds would be frequent; five pounds or more would be more than occasional;  avoid prolonged cold temperature extremes or extreme wetness or humidity; no unprotected heights; and limited to simple, routine, and repetitive tasks, and simple work-related decisions. . . .

(R. at 337.)  The VE testified that the hypothetical individual would not be able to perform his past relevant work, but would be able to perform other jobs in the national economy.  In response to the ALJ's question for examples of jobs the hypothetical individual might perform, the VE testified that person could be employed as a locker room attendant, folding machine operator, fashion design applier, and laminator. (R. at 338-39.)  The VE also testified that an employer would expect an employee to work an eight-hour day, 40-hour week with two 15-minute breaks per day plus a  thirty to forty-five minute break for lunch. (R. at 340.)  The employee would be expected to work at a 45-minute pace for every hour and to miss less than two days per month of work. Id.

## ALJ'S CONCLUSIONS

Here, the ALJ found that: (1) plaintiff meets the non-disability requirements for a period of disability insurance benefits through December 31, 2009; (2) plaintiff did not engage in substantial gainful activity since allegedly becoming disabled on September 29, 2004; (3) plaintiff has a severe impairment from the residual effects from a full amputation and re-attachment of the right wrist and hand; (4) plaintiff did not have any impairment or combination of impairments that met the criteria listed in 20 C.F.R. part 404, subpart P, appendix 1; (5) plaintiff has the residual functional capacity to perform work at the light exertional level; (6) plaintiff was unable to perform any past relevant work; (7) there are jobs that exist in significant numbers in the national and local economies that plaintiff can perform. Based upon those findings, the ALJ concluded that plaintiff was not under a "disability," as defined in the SSA from September 29, 2004 through the date of the ALJ's decision. (R. at 18-28.)

## LEGAL STANDARD

The Congress of the United States provides judicial review where the Commissioner denies a claimant's benefits. 42 U.S.C. § 405(g). This court must determine whether substantial evidence supports the findings of the Commissioner. Id. "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)(quoting Richardson v. Perales, 402 U.S. 389 (1971)). This deferential standard has been referred to as "less than a preponderance of evidence but more than a scintilla." Burns v. Burnhart, 312 F.3d 113, 118 (3d Cir. 2002). This standard, however, does not permit the court to substitute its own conclusions for that of the fact finder.

Id.; Fargnoli v. Massonari, 247 F.3d 34, 38 (3d Cir. 2001)(reviewing whether the administrative law judge's findings "are supported by substantial evidence" regardless of whether the court would have differently decided the factual inquiry).

Under Title XVI of the SSA, a disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). Likewise, a person is unable to engage in substantial gainful activity when "his physical impairment … or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy…" 42 U.S.C. § 1382c(3)(B).

To make a disability determination under the SSA, a five-step sequential evaluation must be applied. Burns v. Barnhart, 312 F.3d at 118-119 (citing 20 C.F.R. § 416.920). The evaluation consists of the following phases: (1) whether the plaintiff is currently engaged in substantial gainful activity; (2) if not, whether the plaintiff has a severe impairment; (3) if so, whether the plaintiff's severe impairment meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app.1; (4) if not, whether the plaintiff's impairment prevents him from performing his past relevant work; and (5) if so, whether the plaintiff can perform any other work which exists in the national economy in light of his age, education, work experience and residual functional capacity. Id. at 119; 20 C.F.R. §§ 404.1520, 416.920.

**DISCUSSION**

Plaintiff raises eight issues on appeal: (1) the ALJ erred in concluding that plaintiff's impairments unrelated to his right arm amputation are not severe impairments; (2) the ALJ's conclusion that plaintiff's condition did not meet or equal Listing 1.00 or any other listed impairment set forth in 20 C.F.R. § 404, subpart P, appendix 1 was not supported by substantial evidence; (3) the ALJ's conclusion that plaintiff retains residual functional capacity for light level work was not supported by substantial evidence; (4) the ALJ erred in relying on plaintiff's sporadic activities of daily living in assessing plaintiff's credibility; (5) the ALJ erred in relying on plaintiff's failure to receive frequent treatment other than pain medication, attend physical therapy, or use a TENS unit as a basis for rejecting his complaints of pain; (6) the ALJ erred in failing to consider the testimony of friends and relatives concerning plaintiff's impairments and their impact on his ability to work basing that decision on the witnesses being related to plaintiff; (7) the ALJ erred in evaluating the medical evidence of record in this case; and (8) the ALJ's hypothetical question was not supported by the medical record and the testimony of plaintiff. The first two issues will be separately addressed and issues three through eight will be considered in the same discussion.


I. **The ALJ did not err in concluding that the residual effects from a full amputation and reattachment of the right wrist and hand are plaintiff's only severe impairment.**

Plaintiff initially argues that the ALJ erred in concluding that plaintiff's left arm fatigue, left hip pain, neck and low back pain, left knee pain, left and right ankle pain, loss of hearing in his left ear, mental impairment, and depression were not "severe" impairments. In addition, plaintiff

argues that all these impairments should be considered in combination as a disability. Under the Social Security Administration's regulations, an impairment or combination of impairments is severe if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1521. For an impairment to be severe, it must have more than a de minimis effect on the claimant. Id.

The ALJ concluded in his findings of fact and conclusions of law that while the effects of plaintiff's right upper extremity amputation and re-attachment constitute a severe impairment, his other impairments are not severe. (R. at 18.) The residual effects of plaintiff's amputation inhibit his ability to perform basic work activities; therefore, there is no dispute that the ALJ did not err in determining that this was a severe impairment. Plaintiff challenges the ALJ's decision with regard to his other impairments.

**a. Arm fatigue**

The ALJ concluded that the plaintiff's left arm fatigue was not a severe impairment because it was unsupported by documentary medical evidence. The Social Security Administration recognizes that an unsupported allegation of impairment is not sufficient to establish the existence of an impairment, much less the existence of a severe impairment, unless medical signs and laboratory findings exist to demonstrate its presence. 20 C.F.R. § 404.1508. Self-reported symptoms alone cannot establish a physical or mental impairment. Id. In the instant case, the ALJ's conclusions are substantially supported by the record. The documented medical evidence of record contains no references to impairment on the left side, the treating physicians reported no abnormalities, and plaintiff was never referred for diagnostic testing of the left upper extremity. (R. at 20.)

13

### b. Left hip, left knee, left ankle, neck and low back pain

The ALJ determined that plaintiff's left hip, left knee, left ankle, neck, and low back pain were not "severe" impairments which would have more than a <u>de minimis</u> effect on plaintiff's ability to perform basic work activities.   These injuries stemmed  from a motorcycle accident when plaintiff was fifteen, a car accident, and a seven-foot fall from a catwalk eighteen years earlier.  (R. at 18, 249.)   The ALJ concluded that the medical evidence in the record failed to support objective findings that these injuries severely limited plaintiff.  Plaintiff's pain management specialist repeatedly reported that plaintiff has a normal gait without antalgia and a non-antalgic sitting posture. (R. at 18, 181-96, 240-45, 254-55, 273-77.)  With regard to plaintiff's lower back pain, the medical evidence supports the ALJ's finding that plaintiff's treating physician found no major limitations or abnormalities in plaintiff's ability to move his hips and back. (R. at 19, 224, 230.)  In addition, the ALJ found that from May 2005 to August 2006, plaintiff's medical records contained no references to complaints or treatment of back impairments despite plaintiff's alleged intermittent sciatica. (R. at 241-44, 255, 275-75.)

### c. Lower extremity pain

Plaintiff complained of left knee and left ankle pain, but the ALJ determined that the record did not support a finding of severity.  A physical examination conducted in May 2005 revealed full range of motion in both knees, both ankles, and a normal gait. (R. at 19, 229-30.) Plaintiff's treating physician did not diagnose any impairment in the lower extremities (R. at 181-96, 240-45, 254-55, 273-77.)   The record supports the ALJ's conclusion that plaintiff's lower extremity pain did not have more than a <u>de minimis</u> effect on his ability to perform basic work and that it was not a "severe" disabling impairment as defined by the SSA.

### d. Ear impairment

The ALJ determined that plaintiff's ear impairment was not a "severe" impairment. Plaintiff's physician reported that the eardrum appeared somewhat dull and that plaintiff had placed cotton in his ear. (R. at 223.)   Plaintiff's physician, however, never reported any difficulty communicating with plaintiff or that more than normal conversational tone and volume were required during the course of treatment. (R. at 20, 221-24.)   Other progress notes from Dr. Thomas and Dr. Vin suggest that the plaintiff was never treated by or referred to a hearing specialist or ever used a hearing aid. (R. at 20, 181-96, 240-45, 254-55, 273-77.)  The ALJ also noted that plaintiff was able to communicate and respond appropriately during the administrative hearing. (R. at 20, 288-332, 349-71.)  Since the alleged severity of this impairment was not supported with documented medical evidence of treatment or referral for a hearing impairment, the record supports the ALJ 's conclusion that plaintiff's claims of hearing loss would not have more than a <u>de minimis</u> effect on his ability to work and was not a "severe" disabling impairment.  20 C.F.R. § 404.1521.

### e. Mental impairment

Plaintiff claimed that  he suffered from a mental impairment and from depression, but the record suggests nothing beyond a <u>de minimis</u> effect. In determining a claimant's claim of mental disability, a mere diagnosis is not enough to prove disability; there must be proof of a related functional loss which prevents a claimant from performing substantial gainful activity.  <u>In re Sullivan</u>, 904 F.2d 826, 845 (3d Cir. 1990); <u>see</u> 20 C.F.R. § 404.1521(a).  Because plaintiff's medical records indicated that his depression seemed to be controlled adequately by prescription drugs, the ALJ concluded that the evidence did not indicate the presence of a medically

determinable mental impairment or any other psychiatric signs of impairment. (R. at 21.) Subsequent progress notes failed to contain references to symptoms of mental health impairment. (R. at 21, 241.) While plaintiff was prescribed an anti-depressant, Lexapro, he was consistently described as awake, alert, in no distress, and with normal mood and clear sensorium. (R. at 21.) Likewise, plaintiff's treating physicians made no referrals to mental health professional. Dr. Vin offered to send plaintiff for a psychiatric evaluation, but plaintiff stated that he preferred to "wait and see." (R. at 246.) The evidence of record with respect to plaintiff's medical history supports the ALJ's conclusion that plaintiff's depression and any allegation of mental impairment would not have more than a <u>de minimis</u> effect on his ability to perform basic work activities. 20 C.F.R. § 404.1521.

### f. Cumulative effects of impairments

Plaintiff argues that the cumulative effects of his claimed impairments, when considered in combination, have more than a minimal impact on his ability to sustain the rigors of competitive work. Under the Social Security Administration's regulations, multiple impairments can be considered severe if a "combined effect of all …impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. The regulations further provide that a "combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §404.1521. In the instant case, the ALJ evaluated the alleged impairments and found that they were not severe. The medical and vocational evidence supports the conclusion that the combining effects of the non-severe impairments have not significantly limited the plaintiff's ability to do basic work activities. In fact, plaintiff continued to work for

many years even after his partial amputation, and the VE testified that even with limitations, plaintiff could still perform basic work activities. Based upon the evidence of record, the court concludes that the ALJ did not err in his findings regarding step two of the disability evaluation.

### II. The ALJ's conclusion that plaintiff's condition did not meet or equal the Listing 1.00 or any other listed impairment set forth in 20 C.F.R. 404, subpart P, appendix 1 is supported by substantial evidence.

Plaintiff argues that the ALJ failed to explain his reasoning when he concluded that the plaintiff's condition did not meet or equal a listing set forth in the regulations. In the third step of the disability evaluation process, the ALJ can find a claimant disabled if an individual "[has] an impairment which meets or equals one of the listings in appendix 1 of this subpart and meets the duration requirement." 20 C.F.R. § 404.1520. In making the determination in this case, the ALJ supported his decision by relying on the opinions of state agency medical consultants who found that plaintiff's condition was not under any listed impairment and that plaintiff could perform light exertional work. (R. at 21, 25.) Plaintiff, however, argues that the ALJ failed to satisfy the requirements for a well-reasoned decision.

Plaintiff argues that the ALJ made a conclusory statement concerning step three of the evaluation process. The evidence in the record in conjunction with the prevailing case law, however, supports a conclusion that the ALJ's determination was substantially supported by the evidence. In Burnett v. Commissioner, 220 F.3d 112 (3d Cir. 2000), the court of appeals specified that "the administrative law judge must set forth the reasons for his decision" and an administrative law judge's bare conclusory statement that an impairment did not match, or is not equivalent to, a listed impairment is insufficient. Id. at 118. In Jones v. Barnhart, 364 F.3d 501

17

(3d Cir. 2004), the court explained that when the administrative law judge's decision, read as a whole, illustrates that the administrative law judge considered the appropriate facts in reaching the conclusion that a claimant did not meet the requirements for any Listing, that kind of discussion satisfies Burnett's requirement that there must be a sufficient explanation to provide meaningful review of the step-three determination. Burnett does not require an administrative law judge to use particular language or adhere to a particular format in conducting his or her analysis. Id. Burnett requires that there be sufficient development of the record and explanation of findings to permit meaningful review. See Id. at 505.

In the instant case, the ALJ concluded that plaintiff did not have a Listing-based impairment because

> the medical evidence does not contain the objective signs, symptoms or findings, or the degree of functional limitations necessary for the claimant's impairments considered singly or in combination, to meet or equal the severity of any sub-section of the above-mentioned listing or any other section contained in Appendix 1.

(R. at 21.) Interestingly, in Jones, both the district court and the court of appeals upheld the administrative law judge's step-three analysis where the administrative law judge used language similar to that of the ALJ here. Id. at 503. In Jones, the administrative law judge stated "that after 'carefully compar[ing] the claimant's signs, symptoms, and laboratory findings with the criteria specified in all of the Listings of Impairments, . . . the claimant's impairments do not meet or equal the criteria established for an impairment shown in the Listings.'" Id. Ultimately, the court of appeals held that the administrative law judge's decision, taken as a whole, weighed the appropriate factors in determining whether the plaintiff met the listing requirement.

Here, the ALJ provided a robust discussion of plaintiff's allegations and the medical evidence relating to his specific impairments over the span of the fourteen-page decision. (R. at 15-28.) The ALJ explained why he relied on the findings of the state agency medical consultant. (R. at 21, 25.) The ALJ discussed the Listings sufficiently to provide meaningful review of the step-three determination. The ALJ relied on the state agency medical consultant's conclusion that plaintiff' impairments did not equal a Listing. The ALJ evaluated and discussed in detail each of plaintiff's alleged impairments which supported his findings and satisfied the standards articulated by <u>Barnhart</u> and <u>Jones</u>.

Plaintiff did not point to evidence supporting his allegations that his impairments equal a Listing. In plaintiff's application for disability benefits, plaintiff alleged that he suffers from "right arm amputated and surgically re-attached; sleep problems, left sciatica problems, neck and shoulder problems." (R. at 86.) These impairments, however, do not equal a Listing under the regulations.

### III. The ALJ erred in not fully developing the record with respect to the side effects of plaintiff's medications – issues three through eight.

Issues three through eight require the court to consider the side effects of the opioid medications taken by plaintiff. It is well established that an administrative law judge has a duty to develop an adequate record, even where the claimant is represented by counsel. <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 557 (3d Cir. 2005). Accordingly, an administrative law judge "must secure relevant information regarding a claimant's entitlement to social security benefits." <u>Ventura</u>, 55 F.3d at 902 (citing <u>Hess</u>, 497 F.2d at 841). The administrative law judge has the power and the duty to investigate fully all matters in issue and to develop the comprehensive

record required for a fair determination of disability.  See Stauffer v. Califano, 693 F.2d 306, 308

(3d Cir. 1982) (citing Diabo v. Sec'y of Health, Ed. and Welfare, 627 F.2d 278, 281-82 (D.C.

Cir. 1980)).

In reviewing a claimant's allegations of pain, the administrative law judge may consider

several factors including:

(i)    Your daily activities;
(ii)    The location, duration, frequency, and intensity of your pain or other symptoms;
(iii)    Precipitating and aggravating factors;
**(iv)    The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms**;
(v)    Treatment, other than medication you received or have received for relief of your pain or other symptoms;
(vi)    Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii)    Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3) (emphasis added).

Here, the ALJ did not fully develop the record regarding the side effects of plaintiff's

medications, in particular Oxycontin and Percocet. The opioid nature of those drugs and the side

effects, especially drowsiness and somnolence, were not adequately addressed by the ALJ.

During the questioning of plaintiff at the hearing, the ALJ alluded to the side effects of these

medications, but did not develop the record with respect to them.  The ALJ when queried by

plaintiff about side effects seemed to regard side effects like being drowsy as perhaps not being a

side effect that would be considered in making the disability determination.  (R. at 313.)

Plaintiff asked the ALJ what he meant by side effects and queried: "Like being drowsy?"  (Id.)

The ALJ rather than respond affirmatively stated: "Well, some unintended effect . . . ."  In that

same colloquy, the ALJ alluded that there were side effects from the opiates, but did not inquire about those effects with specificity or set forth the nature of those side effects.

When the ALJ engaged in a credibility analysis, he failed to set forth the side effects of plaintiff's opioid medications. (R. at 22-26.) In that analysis the ALJ considered plaintiff's symptoms, his demeanor when testifying, the clinical and objective findings of record, his activities of daily living, his medications and their effectiveness, and other non-medicinal treatments. (R. at 21-26.) Ultimately, the ALJ found that,

> claimant's medically determinable impairments could have reasonably been expected to produce the alleged symptoms but that the statements concerning the intensity, duration and limiting effects of the claimant's symptoms are not entirely credible and are inconsistent with the totality of the evidence.

(R. at 22.) The court is unable to find that conclusion is supported by substantial evidence because the ALJ did not consider the side effect of plaintiff's opioid medications.

Plaintiff's treatment history indicates that plaintiff's pain management was not drastically changed throughout the administrative process. (R. at 24, 117-34, 154-62, 169-70.) Plaintiff's continual use of the opioid medications demonstrates their effectiveness. Plaintiff only saw his pain management specialist a couple times a year. (R. at 181-96, 240-45, 254-55, 273-77.) Plaintiff saw his primary care physician on an infrequent basis. (R. at 197-220, 246-53.) He received some specialized treatment by going to a rheumatologist for a cortisone injection, and an orthopedic surgeon for anti-inflammatory medications. (R. at 350-51.) Overall, the record reflects a treatment plan consisting mainly of opioid medications with inconsistent or nonexistent use of physical therapy or TENS unit to relieve pain. (R. at 25, 122, 130, 178-277, 354.) Plaintiff's treating physician opined that the opioid medications effectively treated the symptoms without "undue" or "problematic" side effects. (R. at 181-83, 186-87, 189,

194, 196, 201, 203, 206-07, 241-46, 255, 274-77.) The side effects were not specified and thus it is unclear whether a usual side effect, like somnolence or drowsiness, is considered undue or problematic. While the record supports that plaintiff's symptoms were reasonably controlled by medication, it does not support the ALJ's finding about disability because the ALJ did not develop the record concerning the side effects of the opioid medications used to treat plaintiff's pain or the longitudinal effectiveness of plaintiff's dosages, and the effect the side effects of the opioid medications may have on plaintiff's ability to work. See Stewart v. Secretary of Health, Educ. and Welfare, 714 F.2d 287, 290 (3d Cir. 1983) (administrative law judge must explain rejection of a claimant's testimony regarding side effects of medication); Simms v. Barnhart, 2007 LEXIS 55267 *26 (E.D. Pa. July 26, 2007) (remand for administrative law judge to make "explicit findings regarding the side effects of [the claimant's] pain medication.").

The ALJ determined that written statements of the plaintiff's wife, daughter, and friend regarding plaintiff's activities, functioning, pain, and effects of medication were expectedly favorable to plaintiff. (R. at 26.) The ALJ, however, found that "the medical evidence, self-reported activities of daily living, and vocational input are inconsistent with an individual who is unable to perform any work and inconsistent with these statements." Id. The ALJ for that reason determined that the statements from family members and friends should not be given controlling weight. Plaintiff argues that the ALJ failed to give statements by family members adequate weight in making the determination under Social Security Ruling 06-03p. The ruling permits the Social Security Administration to:

> use evidence from "other sources," as defined in 20 CFR 404.1513(d) and 416.913(d), to show the severity of the individual's impairment(s) and how it affects the individual's ability to function. These sources include, but are not limited to:

> Medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists; and
>
> "Non-medical Sources" including, but not limited to:
>
> Educational personnel, such as school teachers, counselors, early intervention team members, developmental center workers, and daycare center workers;
>
> Public and private social welfare agency personnel, rehabilitation counselors; and
>
> Spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, clergy, and employers.

SSR 06-03p. The ruling specifies that information from " 'other sources' cannot establish the existence of a medically determinable impairment," but "information from other sources may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." Id. When examining evidence from other sources such as family members, an administrative law judge should be guided by the following factors:

> How long the source has known and how frequently the source has seen the individual;
>
> How consistent the opinion is with other evidence;
>
> The degree to which the source presents relevant evidence to support an opinion;
>
> How well the source explains an opinion;
>
> Whether the sources has a specialty or area of expertise related to the individual's impairment(s), and;

Any other factors that tend to support or refute the opinion.

Id.

Here, the ALJ assessed written statements provided by plaintiff's wife, daughter, and friend. (R. at 163-66.)  The witnesses' statements mirrored plaintiff's testimony which the ALJ found to be inconsistent with the evidence of record.  Plaintiff's wife wrote about the effects of her husband's medication, the veracity of his daily pain, and his exhaustion when he worked. (R. at 163.)  Plaintiff's daughter wrote that her father's pain left him unable to engage in sports and camping with her brother and her.  (R. at 166.)  Plaintiff's friend wrote that plaintiff  no longer worked on other people's cars or cut firewood because of the  pain. (R. at 164-65.)  In balancing the testimony under the standards set forth in Social Security Ruling 06-03, the ALJ concluded that the medical evidence, self-reported activities of daily living, and vocational input were inconsistent with an individual who is unable to perform any work.  (R. at 26.)  The ALJ, however, could not properly evaluate the weight given to statements of family and friends in this case because the record with respect to the side effects of plaintiff's daily opioid medications was not fully developed.

Plaintiff argues that the ALJ improperly discounted the medical opinion of the plaintiff's treating pain physician and his treating physician. The Commissioner will give more weight to treating physicians, unless a treating physician's opinion is not "well supported by medically acceptable clinical and laboratory diagnostic techniques and is inconsistent with other substantial evidence…." 20 C.F.R. § 404.1526(d)(2). The opinion must address the nature of the impairment and its severity.  Id.  Lastly, the Commissioner is not bound by the treating physician's opinion

with respect to whether a claimant is disabled because that decision is solely the responsibility of the Social Security Administration.  20 C.F.R. § 404.1527(e)(1)-(3).

The ALJ gave reduced weight to Dr. Thomas's opinion for several reasons. (R. at 25.) First, Dr. Thomas rendered a premature opinion concerning plaintiff's alleged onset date. (R. at 86, 180.)  Second, he failed to provide any clinical or objective findings to support his position. (R. at 86, 180.)  Third, treatment notes indicated that plaintiff was doing fairly well. (R. at 181-96, 240-45, 254-55, 273-77.)  Fourth, plaintiff continued to work a physically demanding job despite Dr. Thomas rendering an opinion of disability. (R. at 181-195.)  Lastly, the medical evidence showed that the plaintiff was doing well, that the plaintiff was awake, alert, and in no acute distress, that his mood was in the normal range, that he walked with a normal gait, that he had a normal pulse, and that he sat with a non-antalgic sitting position. (R. at 276-77.)  Dr. Thomas continued plaintiff's medication because of its efficacy and absence of undue or problematic side effects. (R. at 181-83, 276.)  Dr. Thomas prescribed the opioid pain medications and his conclusions concerning "undue" or "problematic" side effects needs to be expanded, particularly considering plaintiff's testimony that he experienced side effects like drowsiness.  The questions posed to plaintiff by the ALJ did not develop what the ALJ meant by a side effect and the ALJ did not develop the record regarding whether plaintiff experienced somnolence or drowsiness and, if he did, whether those side effects impaired his ability to work.

When an administrative law judge poses a hypothetical to a vocational expert, that hypothetical must include all the plaintiff's impairments that are supported by the record. Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). If the hypothetical does not include all the plaintiff's impairments, then the hypothetical is deficient and the vocational expert's

response cannot be considered substantial evidence.  Id.   Plaintiff argues, among other things, that the ALJ's hypothetical was not supported by the record, that plaintiff was not capable of light duty work, and that the ALJ failed to address plaintiff's impairments.  In the hypothetical, the ALJ posed that the VE should consider a

> hypothetical individual of the same age, education and work experience as the claimant. This person is limited to no more than the light category of exertion as that is defined in our regulations; no climbing of ropes, ladders, and scaffolds; no more than occasional . . . . overhead reaching, feeling, pushing, pulling with the upper right extremity; and no more than occasional pushing and pulling with the right upper extremity . . . .
> . . .
> hand levers less than five pounds would be frequent; five pounds or more would be more than occasional;  avoid prolonged cold temperature extremes or extreme wetness or humidity; no unprotected heights; and limited to simple, routine, and repetitive tasks, and simple work-related decisions.

(R. at 337.)   In response to the limitations posed by the ALJ, the VE, testified that plaintiff, as set forth by the ALJ's findings about plaintiff's RFC, would be able to perform a significant number of jobs in the local and national economy, such as locker room attendant, folding machine operator, fashion design applier, and laminator. (R. at 338-39.)   The  VE, however, also testified that an employer would expect an employee to work an eight-hour day, 40-hour week, and miss less than two days per month. (R. at 340.)

The evidence of record reflects that plaintiff was taking medications which might impair his ability to work.  As of April 14, 2005, plaintiff took 20 mg of Oxycontin three times a day, and 7.5 mg of Percocet three times a day as needed for severe pain. (R. at 208-218.)  Plaintiff testified that Dr. Thomas expected to increase these dosages over time as plaintiff became more tolerant of the medication. (R. at 352-53.)  Plaintiff

testified to drowsiness consistent with somnolence, and difficulties with memory. (R. at 313-14, 326-27.)   Plaintiff had fallen asleep at work and had to write down everything in order to remember things. (R. at 313-14, 326-27.)  Dr. Le's assessment did not address any of these side effects when making his RFC assessment. (R. at 231-38.)

When the ALJ posed the hypothetical to the VE, he failed to include the medications taken by plaintiff and their side effects.  The evidence of record shows a long term and possibly perpetual use of the opioids Percocet and Oxycontin.  Plaintiff's testimony indicates that he has experienced side effects that could inhibit his ability to work in the jobs described by the VE.  The ALJ erred in not developing the record with respect to the side effects of plaintiff's opioid medications and therefore this court cannot conclude that the hypothetical question was supported by the record.  (R. at 338.)

The court need not address any other matters raised by plaintiff with respect to issues three through eight in light of the remand and requests that the ALJ reconsider those matters after developing the record with respect to the side effects of plaintiff's daily use of opioid medications.


**ALJ'S CONSIDERATION ON REMAND**

The court cannot determine whether the plaintiff's ingestion of Percocet and Oxycontin was likely to continue and whether their side effects – specifically somnolence and drowsiness – would impair his ability to work.  Since the ALJ did not discuss the side effects of the medication in the hypothetical posed to the VE, the court is unable to conclude that the evidence of record supports his decision.  On remand the ALJ should develop the record regarding the

side effects of plaintiff's medications and address whether the plaintiff's use of Oxycontin, Percocet and other medications and their side effects affect plaintiff's ability to perform jobs in the national economy.

## CONCLUSION

After consideration of the cross-motions for summary judgment, the court finds that the record was not fully developed and therefore cannot support the ALJ's conclusion concerning whether plaintiff is disabled. Therefore, the parties' cross-motions for summary judgment (Docket Nos. 5 & 7) are **DENIED**, and this court **GRANTS** plaintiff's alternative motion to remand this case to the ALJ for further proceedings consistent with this opinion.

By the court:

Dated: May 30, 2008
/s/ JOY FLOWERS CONTI
Joy Flowers Conti
United States District Judge

_____

cc:   Attorneys of record